KELLOGG *v.* FROHLICH.

1. SALES—PASSING OF TITLE—PROPERTY NOT IDENTIFIED.

Plaintiff, who manufactured oils of various kinds, which were stored in tanks and drawn therefrom for shipment to customers, sold oil to defendant by a contract calling for a certain number of barrels, four different kinds of oil being specified, but no amount of each kind being called for, and delivery was to be made from month to month, the contract calling for a minimum and maximum number of car loads each month. *Held,* that, no oil having been identified and set apart as defendant's, no title to any oil passed to him.

2. SAME — CONTRACT — BREACH BY BUYER — NOTICE OF RESALE— DAMAGES.

Where the purchaser under such a contract refused to accept the goods, and the seller sued for the damages, alleged to be the difference between the contract price and the price at which the seller was forced to resell, no notice of resale was necessary, the measure of damages being the difference between the contract and market price at the time of breach.

3. SAME—REMEDY OF SELLER—MODIFICATION OF CONTRACT.

A contract for the sale of a number of barrels of oil required shipment to be made of from one to three car loads each month between specified dates, as ordered by the buyer. The seller, after urging the buyer to comply with his contract by giving orders for shipment, wrote that he would prefer to have shipping directions, but that unless he received them it would be necessary for him to ship the oil without notice. Thereafter the seller shipped one car load, which was paid for, but the buyer made no reply to the letter. *Held,* in an action for the buyer's breach of contract, that plaintiff had not assumed to deliver all the oil, plaintiff's letter having varied the terms of the contract, on which variation defendant could not rely in the absence of acquiescence.

4. SAME—BREACH BY BUYER— SUBSEQUENT OFFER TO RECEIVE GOODS.

Where plaintiff sold defendant a number of barrels of oil, the contract calling for payment 30 days from date of invoice, and defendant refused to take the oil within the time provided for by the contract, his subsequent offer to take all the

oil on the terms provided for in the contract was not an offer
that plaintiff was under any obligation to accept.

Error to Wayne; Frazer, J. Submitted February 10,
1905. (Docket No. 132.) Decided April 4, 1905.

Assumpsit by Spencer Kellogg against Edward Frohlich
for breach of a contract to purchase certain oil. There was
judgment for plaintiff, and defendant brings error. Affirmed.

Plaintiff, a resident of Buffalo, N. Y., made a contract
with the defendant, residing in Detroit, and doing business
under the name of Edward Frohlich Glass Company.
The contract, dated July 17, 1902, was in two parts, one
signed by the plaintiff, and the other by the defendant.
The part signed by the plaintiff reads as follows:

" I have this day sold and agreed to deliver to Edward
Frohlich Glass Company, of Detroit, Michigan, fire and
strike excepted, 900 barrels pure linseed oil, delivered in
barrels at Detroit, Michigan, as follows: 900 barrels in
car loads of 60 barrels each, all to be taken between October 15th, 1902, and July 1st, 1903, not less than one car
nor to exceed three cars in any one month. Raw oil, 6c.
per lb.; boiled oil or aged raw oil, 2/15c. per lb.; Kellogg
varnish or refined oil, 4/15c. per lb.; heavy bodied boiled
or superior oil, 10/15c. per lb., over raw oil price. Terms
of payment, 30 days or less 1 per cent., if paid in 10 days
from invoice date. Shipments to be made according to
this agreement in car load lots and within ten days of
specified dates. It is understood that there are no conditions or representations relating to this sale other than
stated hereon."

The part signed by the defendant reads as follows:

" We, the undersigned, have this day bought and
agreed to receive of Spencer Kellogg, Buffalo, N. Y., fire
and strike excepted, 900 bbls. pure linseed oil, delivered
in barrels at Detroit, Mich., as follows: 900 bbls. in car
loads of 60 barrels each, all to be taken between October
15th, 1902, and July 1, 1903, not less than one car nor to
exceed three cars in any one month. Raw oil, 6c. per lb.;

boiled oil or aged raw oil, 2/15c. per lb.; Kellogg varnish or refined oil, 4/15c. per lb.; heavy bodied boiled or superior oil, 10/15c. per lb., over raw oil price. Terms of payment, 30 days or less 1 per cent., if paid in ten days from invoice date. Shipments to be made according to this agreement in car load lots and within ten days of specified dates. It is understood that there are no conditions or representations relating to this sale other than stated hereon."

Defendant ordered one car load shipped in November, and one in February. These cars were shipped, and at the same time defendant requested plaintiff not to send any more oil, as he was crowded for room. Plaintiff continually urged the defendant to take the oil as the contract provided, and on February 14, 1903, wrote him as follows:

" If the oil had been taken as it was contracted for, possibly you might have disposed of it. However, you are so much behind now, it may be difficult for you to do so. In any event our former letter stands good, and we are obliged to ask you for shipping instructions for all oil due as per the amount already mentioned. I should much prefer having your shipping instructions for the oil than to ship it out without notice, which it will be absolutely necessary to do unless I hear from you with shipping orders. According to the contract, I understand from our attorney, that it is sufficient to give notice if shipment as per these letters for all undelivered oil. This is not aimed at any one in particular, but is absolutely imperative on our part, as we cannot hold the oil any longer. Kindly let me hear from you by return mail."

After this one car load of oil was shipped without any order, and accepted and paid for. Defendant gave no other orders. Plaintiff shipped no more oil. At the expiration of the time, July 1, 1903, plaintiff placed the case in the hands of his attorneys. One of them saw the defendant, and had a conversation with him about the claim. Thereupon, and on July 10, 1903, defendant wrote the following letter in duplicate, sending one to plaintiff at Buffalo, and the other to his attorneys at Detroit:

"We have written your attorneys, Messrs. Bowen, Douglas & Whiting, as follows: .

"'Your Mr. Murfin called on me relative to the balance of oil you claim to be due under our contract of July 17, 1902, with Spencer Kellogg, and as I stated to him, I am now ready to carry out the contract and take the oil you claim due me under the contract. Therefore please ship 500 bbls. of the total amount in raw, and the remainder in boiled. Please see to it that the cooperage is first class.'

"This offer is made without prejudice to any of the rights we may have in this matter."

Plaintiff refused to then deliver the oil, and brought suit to recover for breach of contract.

The declaration sets forth the contract in full, alleges a breach by the defendant, alleges that the market price had fallen, and that in consequence of his failure to perform the contract plaintiff had suffered great loss, "being the difference between the price indicated by the contract, and the price at which the plaintiff was forced to resell, and did resell, his said oil."

Three defenses are made:

(1) That the contract is an executed contract; that under it the title to the oil vested absolutely in the defendant; and that, in order to recover under the declaration, plaintiff must have given notice to defendant of his intention to sell the oil, and must actually have sold it.

(2) That it was plaintiff's duty to deliver the oil at Detroit, and that, having failed to deliver or tender the oil there, he cannot recover.

(3) That it was plaintiff's duty to accept defendant's offer to take the oil as contained in defendant's letter of July 10th.

The case was submitted to the jury, and verdict rendered for plaintiff.

*Wilkinson & Younglove*, for appellant.

*Bowen, Douglas, Whiting & Murfin*, for appellee.

GRANT, J. (*after stating the facts*). 1. Plaintiff was a manufacturer of oils of various kinds or types. As it

was manufactured it was stored in large tanks, from which it was drawn to ship to plaintiff's customers as orders were received or contracts made. Manifestly, the oil which was covered by this contract was not in existence at the time the contract was made. It was not, therefore, contemplated that the oil covered by the contract was a part of a distinct mass then in existence and stored in plaintiff's tanks. The contract called for four different kinds, but not for a specific amount of each kind. The defendant could have ordered the whole 900 barrels of one kind, or of two or of all kinds. There was to be no delivery if delivery was prevented by fire or strikes. There was no identification, and no selection out of a common mass. The minds of the parties could only meet as to the identical goods to be furnished when the defendant, in compliance with his contract, had ordered the number of barrels of such oil as he wished shipped to him. Under these conditions, nothing short of language which can leave no doubt of the intention of the parties to pass title will justify the finding that the title had passed. 1 Mechem on Sales, §§ 695, 717; *Lingham* v. *Eggleston*, 27 Mich. 324; *First Nat. Bank of Marquette* v. *Crowley*, 24 Mich. 492; *Hahn* v. *Fredericks*, 30 Mich. 223. We find no such language in this contract. The expressions "have sold," in the one part, and "have bought" in the other, are to be construed with reference to all the provisions of the contract and the surrounding circumstances. They are not of themselves conclusive of the intent.

In this connection it is urged that the plaintiff's declaration is framed upon the theory of a resale, "and that said resale cannot be without notice of an intention to resell; and, no such notice having been given, the plaintiff cannot recover." As already stated, title had not passed; there was no oil identified and set apart as the defendant's; there was no identical oil to put up for sale. The oil specified in the contract had a market value, and, presumably, the price at which it would sell would not be above that value. It is probable that the oil which would have been

furnished to the defendant, had he complied with his contract, had been sold, as the tanks were constantly being emptied and filled. Counsel cite no authorities that notice of a sale was necessary. Evidently the notice would have been an idle ceremony, as the real damage sustained would be the difference between the contract and the market or selling price at the time of the breach. We think notice of an intention to sell was unnecessary. The request, therefore, was properly refused.

2. Plaintiff was under no obligation to deliver the goods except as instructed by the defendant. The delivery was to be of one to three car loads each month, of such kinds as defendant should direct plaintiff to deliver, within 10 days of the dates specified. Defendant could not wait until after the expiration of the time and then order a delivery of the whole amount. After repeatedly urging the defendant to comply with his contract in giving orders for shipment, the plaintiff, on February 14th, wrote to him for shipping instructions, and in the letter said:

"I should much prefer having your shipping instructions for the oil than to ship it out without notice, which it will be absolutely necessary to do unless I hear from you with shipping orders."

It is urged that the plaintiff by this letter assumed the delivery, and, by shipping one car load thereafter, assumed the burden of delivering all the oil at Detroit. To this letter defendant made no reply. It was not a waiver of the obligation on the part of the defendant to comply with the contract. It varied the terms of the contract, and the defendant is not in position to assert such change, unless he acquiesced in it.

3. Plaintiff was under no obligation to accept defendant's offer contained in his letter of July 10th. Defendant had violated his contract. He had not ordered the goods as required. His offer was to "take the oil you claim due me under the contract." The times of delivery had expired. It was, of course, the duty of the plaintiff to make all reasonable effort to reduce the damages. The

contract was at an end, and he was under no obligation to sell upon credit. The contract provided for payment 30 days from date of the invoice, or less 1 per cent. if paid within 10 days from such date. Defendant's offer in the letter was not to pay cash, but to take the goods upon the credit provided in the contract. If defendant had offered to take the goods, and tendered in cash the price fixed by the contract, undoubtedly the plaintiff would have been required to accept it, or, failing to accept it, would have been held to waive any claim for damages. But defendant was seeking to revive a dead and broken contract.

Judgment affirmed.

CARPENTER, MCALVAY, MONTGOMERY, and HOOKER, JJ., concurred.