[No. 3636.]

## LEEPER v. SCHROEDER ET AL.

1. PAYMENT—*By Check.* A check upon a bank which has no funds of the drawer, and has consented to meet the check only by draft on another bank which will only give credit therefor, is no payment.

2. SALE—*Purchaser's Refusal to Accept—Seller's Remedy.* Where upon executory agreement for the sale of chattels the purchaser refuses to perform his contract, the seller may (1) store the goods for him, and recover the full contract price, or (2) retain the goods and recover the difference between the agreed price and the market price at the time and place specified in the agreement for delivery, or (3) he may sell the goods at the best price obtainable and recover of the purchaser the loss sustained, measured, in general, by the difference between the contract price and the proceeds of the sale.

And where neither title or possession has passed, the seller is not required to give notice to the purchaser of his intention to resell the goods, as a condition precedent to his right to recover what is lost thereby. *Magnes v. Sioux City Co.,* 14 Colo. App., 219, followed.

Nor is it necessary that the particular goods, the subject-matter of the contract, should, before the purchaser's refusal to accept, have been segregated and set apart.

And if the place of delivery affords no market, the vendor may send the goods to the nearest and most available market. One pur-

pose of the re-sale is to establish the true value of the goods, at the time, and not leave this to future controversy; therefore, the subject-matter of the contract being a number of lambs on foot, the place of delivery being Grant, N. M., where there was no market; and the lambs being shipped to Denver and sold there, the market price being clearly established, the fact that some of those actually delivered on re-sale were not fully up to the requirements of the contract, and that some died while in transit, and that some were shipped from another place than that specified for the delivery—the expense of the shipment not being increased—was held unimportant.

*Appeal from Weld District Court.* HON. JAMES E. GAR-RIGUES, Judge.

Mr. F. J. GREEN, Mr. C. D. TODD, for appellant.

Mr. T. J. LEFTWICH, Mr. H. I. GARBUTT, Messrs. CLAMMER & TEMPLE, for appellees.

KING, J., delivered the opinion of the court.

F. J. Schroeder and B. A. McMurry, co-partners under the firm name of Schroeder & McMurry, appellees herein, brought their action to recover from the defendant, Leeper, the sum of $977.78, as damages for an alleged breach of contract which the said defendant had entered into for the purchase from plaintiffs of certain lambs. Upon trial to the court without the intervention of a jury judgment was rendered for plaintiffs, in the amount demanded. The contract sued upon was in writing and as follows:

"This contract and agreement made and entered into this 22nd day of August in the year of 1907, at Greeley, Colo., by and between Schroeder & McMurry as party of the first part and C. E. Leeper as party of the second part, that party of the first part has this day sold and contracted with the party of the second part the following described sheep: 1,040 head of good, open-wooled lambs of Grants, New Mex., guaranteed to average not less than 60 lbs., and not to take any under 50 lbs., to be

weighed after a twelve-hour shrink in a dry corral, at $5.65/100 per hundred pounds, F. O. B. at Grants, New Mex., on or about the 31st day of October, 1907, at which time and place the party of the second part agrees to receive them.   Received on the above $50.00/000, balance of the purchase price to be paid when sheep are delivered.

SCHROEDER & McMURRY,

C. E. LEEPER.''

The complaint alleged that pursuant to the terms of this contract plaintiffs had, ready to deliver, at Grants, New Mexico, on the 31st day of October, 1907, lambs of the number and quality mentioned in the contract, and cars for their transportation, and held the same several days after said time; that prior to the date fixed for delivery they notified defendant that the stock would be ready for delivery on the date and at the place named in the contract, and that defendant had failed and refused to receive the same; that because of a serious money panic there was no market value for the lambs at Grants, New Mexico, at the time of the refusal of the defendant to receive the same, and that Denver was the nearest place at which there was a market; that after refusal of the defendant to receive the lambs, plaintiffs shipped the same to the market in Denver, where they were sold on said market for the highest price which they could obtain; that the difference between the contract price and the selling price, after deducting freight charges from Grants, New Mexico, to Denver, Colorado, and making allowance for the $50 paid in advance, was $977.78.   The re-sale was made about December first.

Defendant, after demurrer which was overruled, answered, admitting the contract, but denying that at any time after the date thereof and prior to November 12th, plaintiffs notified him that the lambs were ready for delivery, and alleged that they then gave notice that the lambs would be ready for delivery at Albuquerque, New

Mexico, within a few days, insteads of Grants; that defendant immediately proceeded to Albuquerque, arriving on the night of November 14th, and that on November 15th he was notified by plaintiff, Schroeder, that plaintiffs did not have and could not deliver at Grants, the lambs mentioned in the contract, and that plaintiffs failed and refused to deliver the lambs mentioned in the contract, at any time or place. The new matter in the answer was denied by replication.

At the trial the court found in favor of the plaintiffs on every disputed question of fact, upon evidence amply sufficient to justify such findings. The evidence upon the part of plaintiffs clearly showed that, after making the contract, they purchased and had on hand some 25,000 head of sheep, several thousand of which were at or near Grants, held, as was the usual custom, upon the open range, where they could be readily called in and delivered; that at and for some days prior to the 31st of October, and also for many days thereafter, they had a sufficient number of lambs of the weight and quality described in the contract from which they could have made the delivery as contracted, and were ready and anxious to deliver the same; that on or about the 28th of October Schroeder notified the defendant that the sheep would be ready. At that time a serious money panic was prevailing and defendant was unable to secure the money in Colorado for the purchase price, and for that reason plaintiffs agreed to extend, for a few days, the time for delivery, and also attempted to make arrangements in New Mexico, and did make arrangements, by which the paper of defendant, endorsed by plaintiffs, would be accepted by the owners of the sheep from whom plaintiffs had contracted to buy the same to fill their contract with defendant, and thereupon telegraphed defendant to come to Albuquerque and make the arrangements. Defendant presented himself at Albuquerque, but declined to make

the necessary arrangements. There was no evidence of an absolute refusal to receive the sheep, but much evidence that defendant was unable or unwilling to do anything in way of payment to carry out the agreement, unless perhaps to give his check upon a bank in Colorado in which he had no funds. He did not offer payment in that way, but on the trial contended that he had arrangements with that bank to honor his check, which claim was supported by the cashier of the bank, but whose testimony clearly showed that if the check had been presented the bank would not have paid it except by its draft upon some other bank, which also would refuse payment except by giving credit; and it is too obvious to require discussion that under the circumstances such check, if tendered, would not have been payment unless accepted, and would not have been accepted by either the plaintiffs or the owners of the sheep. It seems clear, as found by the trial court, that defendant was either unwilling to receive the sheep, or unable to make payment therefor, or both, the evidence tending to show that he was not even supplied with sufficient funds to pay freight charges. The testimony is conflicting as to the matter of notice that the sheep were ready for delivery, and as to what was said and done at Albuquerque, but the conflict is immaterial in view of the court's finding supported by testimony.

Briefly stated, appellant's main contention is (1) that under the pleadings and the evidence, notice to the defendant of plaintiff's intention to sell the lambs and hold defendant liable for the loss sustained by his breach of contract was necessary to fix his liability, and, therefore, for want of such allegation the complaint was insufficient, and for lack of such proof the evidence was likewise fatally insufficient; (2) that it was necessary to show a segregation of the lambs contracted, and tender, or readiness to tender the same so segregated and iden-

tified at the time and place mentioned in the contract, and that the same lambs so segregated and identified were the ones resold by plaintiffs; (3) that the evidence does not show a sale of the sheep for the best price that could be obtained.

1. The contract sued on is an executory contract of sale and purchase.—*Kellogg v. Frohlich*, 139 Mich., 612, 102 N. W., 1057; *Fox v. Kitton*, 19 Ill., 519, 532; *Watkins v. Nugen*, 118 Ga., 372, 45 S. E., 262; *Hatch v. Standard Oil Co.*, 100 U. S., 124, 130, 132, 25 L. Ed., 554. Upon breach by the vendee of his executory contract to purchase chattels and receive and pay for the same upon delivery, the vendor, in case title has not passed and he is in possession of the goods, may store the same for the vendee, give him notice thereof, and thereupon sue and recover the full contract price; or, he may keep the goods and recover the difference between the contract price and the market price thereof at the time and place of delivery mentioned in the contract; or, he may sell the goods for the best price he can obtain and recover from the vendee the loss sustained, generally measured by the difference between the contract price and the net proceeds derived from the sale.—Mechem on Sales, Sec. 1647; *Magnes v. Sioux City N. & S. Co.*, 14 Colo. App., 219, 59 Pac., 879. With the foregoing statement of the vendor's choice of remedies or method of proceeding to fix and measure the liability of the vendee for breach of his contract, appellant agrees, except that he insists that notice of intention to sell is a necessary element to be alleged and proven in order to fix and measure liability under the third remedy or method, which he asserts plaintiffs have elected to the exclusion of the others. As to whether notice of re-sale is necessary where title has passed there seems to be a hopeless and irreconcilable conflict of authority.—35 Cyc., 522; *Magnes v. Sioux City N. & S. Co.*, *supra;* Mechem on Sales, Sec. 1633. In Williston on

Sales, Sec. 548, it is said that by the weight of authority there is no such absolute requirement, and the statement is supported by a long array of decisions. In Mechem on Sales, Sec. 1634, it is said: "The rule, however, which, it is believed, is sustained by the weight of authority is, that unless the goods are perishable, or other special circumstances would render notice impracticable or unavailing, notice of the seller's intention to resell must be given, if the seller intends to make the price realized upon the re-sale the basis of his recovery against the buyer." And this statement is supported by decisions from various states. But upon the necessity of notice, in case of breach of an executory contract, where neither title nor possession has passed from the vendor, we think the same conflict of authority does not exist, and that the better authority and reason, as well as the weight of authority, is that such notice is not necessary.—*Magnes v. Sioux City N. & S. Co., supra; Wallace v. Coons,* 48 Ind. App., 511, 95 N. E., 132; *Kellogg v. Frohlich, supra; Dill v. Mumford,* 19 Ind. App., 609, 49 N. E., 861. But whatever may be the weight of authority, we agree with both the reasoning and the conclusion of Judge Bissell in *Magnes v. Sioux City N. & S. Co., supra,* in which it was held that, under the circumstances in that case, there was no necessity to give notice of intention to resell the property; and as applied to the circumstances in the instant case, we think the question may thereby be regarded as *stare decisis* in this jurisdiction.

2. Counsel for appellant contend for the rule that, as a condition precedent to the right of recovery, plaintiffs, prior to the alleged breach of contract, must have selected, segregated and set apart for defendant's use, the animals contracted for in number and quality as in the contract specified, so that they became fully identified, and in support thereof say: "The reason of the rule is that since segregation is necessarily precedent to

*passing of title,* the vendor must, before breach, segregate the property so that title shall pass to the vendee. He can then treat the property as the property of the vendee and act as his agent in selling the same.'' Counsel's conclusion is based upon the unwarranted assumption that re-sale cannot be made unless the title has passed to the vendee. In re-sales by vendor, where title and possession have not been transferred, the imputation of his agency for vendee, is a bald fiction. As has been shown, the contract was executory. The title had not passed and was not intended to pass until delivery and payment. Plaintiffs were not required to treat and could not logically treat the property as that of the defendant and sell it as his agent, for the property was not the defendant's, and never became his. The purpose of the re-sale by the vendor, in addition to saving unnecessary loss to himself, or the vendee, was thereby to obtain evidence of and establish the market price or value of the property at the time of the controversy, rather than to rely upon what must otherwise have been a matter of conjecture or opinion.—Mechem on Sales, Secs. 1649, 1692. We think the rule asserted is not applicable.

3. The evidence showed that on account of the money panic there was no market value at Grants, New Mexico, at the time and place specified for delivery, nor subsequent thereto and until the re-sale was made; that the nearest place where there was a market was Denver. It is well settled that if the place of delivery affords no market for the articles sold, the vendor may send the goods to the nearest and most available market and there dispose of them in such a way as to produce the largest possible results.—Mechem on Sales, Secs. 1639, 1742; *Lewis v. Greider,* 51 N. Y., 231; *Ingram v. Wackernagel,* 83 Ia., 82, 48 N. W., 998; *Anderson v. Frank,* 45 Mo. App., 482. There was some evidence tending to show that some of the sheep actually delivered on re-sale were not fully

up to the grade required by the contract, and that some died en route. But the evidence quite clearly shows the market price in Denver at the time of the sale for sheep of the character specified in the contract; and the amount of the loss or damage was ascertained by computation at such market price upon the number contracted at the average weight specified in the contract. Under the circumstances we think this furnished a fair basis for arriving at the loss sustained.

We do not deem it necessary to discuss in detail other points raised by appellant, although all have been carefully considered, and the opinion would be unduly prolonged by so doing. Upon the whole record, and without regard to merely technical questions, we think the equities are with the plaintiffs. Under the trying circumstances created by the panic they did more than in law they were required to do in order to fix liability upon the defendant. They extended to him time for performance, and gave much time and effort to making arrangements by which he could raise funds to carry out his contract, even to the extent of offering the credit of their own endorsement upon his paper, and also offered a reduction of twenty-five cents per one hundred pounds from the contract price as a further inducement. The further effort to dispose of the sheep by re-sale, so as to make the loss as light as possible, was more than they were required to do under the strict rules of law. They might well have brought suit for the difference between the contract price and the market price, without any effort to dispose of the stock. And if it be conceded, as contended by the defendant, that some of the sheep resold were not shipped from Grants, and were not the identical sheep that were to have been delivered to the defendant, nevertheless, for the purpose of fixing the market price by which the loss is to be determined, it is wholly immaterial whether the sheep were the identical animals (or

shipped from the same place if the expense of the shipment was not increased) so long as they were of a corresponding grade and in such number that the market price thereof would be and was the same as if the identical sheep, segregated, set apart and identified, had been shipped from the same place and resold and delivered. The judgment is affirmed.

MORGAN, J., dissenting:

Plaintiffs recovered $2,054 damages against defendants in these two cases, Nos. 3636, 3637, (which were consolidated for trial, judgment for one-half the aforesaid amount in each case) on a breach of contract for the sale of $7,048 worth of sheep, and the judgments are so manifestly unreasonable and disproportionate that I cannot concur in the conclusion reached by my associates affirming them, because it is not, in my opinion, in harmony with exact justice, and not a correct application of the law in respect to the damages allowed.

While the record leads me to a different conclusion from that reached by the trial court, as to whether the defendants defaulted in their contract to buy the sheep, no dissent is made as to this conclusion, as there was testimony upon which such finding could be based.

The evidence on the question of damages, however, was wholly insufficient upon which to base a judgment for any amount, and especially the amount allowed, which is, to my mind, oppressive, and vastly in excess of what justice would require, and borders upon the imposition of a penalty upon the defendants for failure to take the sheep, as the only reason they did not take them was on account of the bankers' panic, because of which their checks were not acceptable in payment for the sheep, and the cash could not be obtained. Plaintiffs, themselves, could not get the cash to pay the owners from whom they had originally purchased the sheep, without first getting

it from the defendants. If plaintiffs had paid the owners in full for the sheep, and then accepted defendants' checks and taken credit in defendants' bank, until the panic was over, they would have been paid in cash, and no difficulty would have arisen. So it seems the plaintiffs were about as "deep in the mud" as the defendants were "in the mire," so far as cash was concerned.

Nevertheless, the plaintiffs sued the defendants, and alleged that they "had purchased the *said lambs* solely for the purpose of delivering the *same* to defendant in accordance with said contract; * * * That after the absolute refusal of the defendant to accept the *said lambs,* the plaintiffs, in order to prevent a total loss of the *said lambs,* shipped the *same* to the market at Denver, Colorado, and placed the *same* on the market for sale; * * * that the plaintiffs sold *said lambs* in the said open market at Denver for the highest price which the plaintiffs could obtain; * * * That the difference between the said contract price of the *said lambs* and the amount realized from the sale of *same* as aforesaid is $977.78. That owing to the aforesaid demoralized condition of the stock market it was impossible for the plaintiffs to receive any greater amount from the sale of *said lambs* than was received."

Thus the plaintiffs plant themselves squarely upon the right to sell the property and sue for the difference between the best price that could be obtained on the market, or the nearest market, and the contract price. But when the testimony is read, it is found that one of the plaintiffs testified that they did not sell "the said lambs" and did not ship "the same," but only sold 1,366 thereof, and put into the shipment 714 at a different station and from another herd, and then sold the 2,080 thus gathered together, claiming. however, that the 714 were just as good as those they had purchased and had arranged to deliver to the defendants. One of the plaintiffs testified,

even, in answer to a question as to whether he sold the same sheep he had ready for delivery to the defendants, that ''the 1,366 were the same sheep—that is, part of them—they were the same sheep. Q. But the remaining 700 were not? A. We loaded them at a different point; they were not the same sheep that were loaded at Carthage.'' This testimony clearly indicates that even a part of the 1,366 was not taken from the sheep they had ready to deliver to the defendants, and that, certainly, all of the 714 were not taken therefrom. The query arises: What did they do with *all* of the 2,080 sheep that they had ready to deliver to the defendants, and if they were sold, how much did they get for them? They testified to a shipment and sale of a portion of them, but there is no testimony as to a sale of the others. As they relied upon recovering the difference between the contract price and what they sold the sheep for, it is quite important to know what they did with the sheep which they did not ship and sell, and, if they sold them, did they sell for more or less than defendants were to pay? The measure of damages here is, according to the pleadings, the evidence and the judgment, the difference between the contract price and the amount received on a re-sale; or, the loss sustained, on such re-sale, by the plaintiffs, if they sustained any loss. Because, if they sustained *no loss, no action* lies.

The majority opinion, with the possible exception of the notice required under the third remedy provided, correctly states the law, that:

''Upon breach by the vendee of his executory contract to purchase chattels and receive and pay for the same upon delivery, the vendor, in case title has not passed and he is in possession of the goods, may store the same for the vendee, give him notice thereof, and thereupon sue and recover the full contract price; or, he may keep the goods and recover the difference between

the contract price and the market price thereof at the time and place of delivery mentioned in the contract; or, he may sell the goods for the best price he can obtain and recover from the vendee the loss sustained, generally measured by the difference between the contract price and the net proceeds derived from the sale.''

Plaintiffs adopted and relied upon the third remedy above suggested, and claim to have resold the sheep; but the majority opinion says, conceding that the sheep sold were not the same that were to be delivered to defendants, that:

''The purpose of the re-sale by the vendor, in addition to saving unnecessary loss to himself, or the vendee, was thereby to obtain evidence of and establish the market price or value of the property at the time of the controversy, rather than to rely upon what must otherwise have been a matter of conjecture or opinion.''

The majority opinion thus permits the plaintiffs to recover upon the second remedy suggested, and not upon the third, upon which they relied, and upon which the judgment is based.

The majority opinion states, further, that:

''There was some evidence tending to show that some of the sheep actually delivered on re-sale were not fully up to the grade required by the contract, and that some died en route. But the evidence quite clearly shows the market price in Denver at the time of the sale for sheep of the character specified in the contract; and the amount of the loss or damage was ascertained by computation at such market price upon the number contracted at the average weight specified in the contract. Under the circumstances we think this furnished a fair basis for arriving at the loss sustained.''

Thus the majority opinion permits the plaintiffs not only to recover upon a different remedy from that which they selected and upon which they tried the case, and

upon which the judgment was entered, but permits them
to recover upon a grade of sheep that were not fully up
to the grade required by the contract, simply because the
market price, in Denver, at the time and place of the sale,
for sheep, of the character specified in the contract, was
shown. The evidence, however, discloses that the sheep
were sold in Denver, over 500 miles from the place of
delivery, and a month after the time of delivery. Further
on, the majority opinion states that, "It is wholly imma-
terial whether the sheep were the identical animals, so
long as they were of a corresponding grade." But the
opinion says there was some evidence tending to show
that some of the sheep were not of a corresponding grade;
and the record discloses there was undisputed evidence
to this effect. Mr. Farr, the man who purchased the
sheep, testified that he sold part of them to a Mr. Wilson;
that all of the sheep he sold to Wilson were taken from
those he purchased from plaintiffs; and Mr. Wilson tes-
tified that the sheep he bought from Mr. Farr were a
"mixed bunch, a few long-wooled, coarse-wooled sheep.
They were not all good, open-wooled lambs. At the stock-
yards there were forty-three counted out as sheep and
yearlings. There were about a dozen that were not open-
wooled lambs." There was no testimony in rebuttal, and
hence this testimony was uncontradicted, although plain-
tiffs did testify that the sheep that were shipped were
up to the contract, but neither of them was present when
*all* of them were shipped, nor when any of them were
delivered in Denver. Thus the plaintiffs are permitted
to recover upon a remedy which they never relied upon
in their complaint, nor in their testimony, nor in the
theory upon which the case was tried, and upon which a
judgment was rendered, and also upon a sale of sheep
that were not only different from those sold to the de-
fendants, but not of as good a grade. Defendants are
thus deprived of a substantial right, especially, because

they have never had any opportunity to rebut the testimony as to the market value upon which the plaintiffs were allowed to recover; and, generally, because no proof of a market value, at the time and place of delivery, was made, and no definite proof thereof, at any other time or place. The defendants went to trial, and the case was tried, upon the claim by the plaintiffs that they resold the sheep for the best price they could obtain, and the defendants were never apprised, before or during the trial, that any claim would be made as to the market price, or any attempt to recover upon that remedy, and their first knowledge that the plaintiffs did recover upon that remedy will be when they read, or have notice of, the opinion of this court.

The majority opinion seems to have adopted the view taken by the lower court when it was said in the findings that "they (plaintiffs) simply sold out the herd of sheep remaining, up here." "I believe for the best price they could obtain." And the plaintiffs are permitted to recover upon the sale of what they had left, out of about 15,000 head of sheep, and after upwards of 13,000 head had been culled therefrom. (One of the plaintiffs testified that, "there might have been a few under fifty pounds, but it was their privilege to weigh them and throw them out.") There is no testimony, even, to show or upon which to base any definite conclusion, but what the plaintiffs sold all of the sheep which they had ready to deliver to the defendants, and shipped and sold upon the market a remnant of 1,366, at Grants, New Mexico, after disposing of all the rest of about 15,000 head which they claim to have had at the time and place of delivery, from which they intended to select the 2,080 for the defendants.

Suppose, however, we say this court is justified in concluding that plaintiffs' complaint might fit an action adopting the second remedy suggested, and in affirming

this judgment—giving the plaintiffs $2,054 damages on a contract of sale of 2,080 lambs—nevertheless, the evidence will disclose that the plaintiffs never brought themselves within the purview of any right to recover for the market value, for the reason, no doubt, that their entire purpose was to recover upon another theory, that is, the difference between the price they sold the sheep for and the price defendants were to pay. It would have been an easy matter for them to have established the market value at the time and place of delivery, but no testimony was introduced for such purpose, and none crept in, under the proof as to what they sold the sheep for, from which any definite conclusion can be reached. A mere statement that there was no market at Grants, New Mexico, the place of delivery, made as a reason for selling at Denver, and what the market price was in Denver, 500 miles away, and a month after the time of delivery, and the sale of one bunch of sheep different in some instances as to grade, and the testimony of one witness as to what the market price in Denver was, without giving the date, established nothing as to the market value at the time and place of delivery, or anything near to it.

Furthermore—and particular attention is called to this testimony—one of the plaintiffs testified that when the 1,366 were loaded at Grants, New Mexico, the owners agreed to release the plaintiffs from their contracts of purchase as to all sheep that had strayed too far away to be gathered together, for shipment, if plaintiffs would take the 1,366, which one of the plaintiffs testified was all they had left at Grants. If 2,080 strayed away, then all that defendants were to receive are still there; at least, 714 must be. What was plaintiffs' loss on these, if any? This loss, under the allegations of the complaint and the evidence, and in all fairness, is the true measure and basis of damages. And, again, plaintiffs testified that there were others who defaulted in their contracts to buy; is

it not right to assume, in the absence of any testimony thereupon, that at least a portion of the remnant, even of the 1,366, were sheep that others failed to take, especially when one of the plaintiffs testified *"part* of them were the same sheep" the defendants failed to take? All of these things show the absolute insufficiency of the evidence.

Plaintiffs demand the last cent which the law, on account of its universality, gives to them, and the same strict rule should be applied when it comes to their claim and proof of damages. Plaintiffs' own testimony discloses that they not only failed to prove themselves within the rule or remedy suggested in the majority opinion as to a re-sale of the sheep, but they also failed to establish any market value at the time and place of delivery so as to entitle them to recover upon the second remedy suggested by the majority opinion—that is, upon the difference between the selling price and the market value of the sheep, and they certainly established, by their own testimony, that they sustained a loss only as to 1,366 head.

Defendants contend that they should have had notice from the plaintiffs of their intention to resell the sheep. It would have been no trouble for the plaintiffs to have given this notice, and it would have been evidence of an intention to deal fairly with the defendants. It would have given defendants an opportunity to have protected themselves. It seems to have been no trouble to notify them to get their cash to pay for the sheep. The authorities are somewhat in conflict as to the necessity of notice, but the better rule is that each case must be decided upon its own facts and circumstances.—*Magnes v. Sioux City N. & S. Co.,* 14 Colo. App., 219, 59 Pac., 879.

In this case the court held that notice of the *time* and *place,* under the law, was not necessary, but, as to notice of *intention* to *resell,* it is held that:

"We are not compelled to go to the verge of holding that there is no necessity to inform the vendee of the intention to resell, nor of holding that the vendor may dispense with this notice under any and all circumstances. All we intend to hold is that under the circumstances disclosed by this record, the vendor was under no obligation to give the vendee this notice."

In *J. D. Best Co. v. Brewer,* 50 Colo., 455, 115 Pac., 726, Campbell, J., said:

"Counsel for defendant cites a number of authorities on the appropriate measure of damages where a vendor sues a vendee who refuses to carry out a contract of sale. They may correctly apply the rule under their respective facts. The court properly instructed the jury here that there were several remedies open to plaintiff, and that, where a defendant wrongfully refused to accept a consignment of goods which he has purchased, and where the title has not entirely passed from the seller, or where the buyer wrongfully refuses to receive the goods and gives his consent thereto, the seller may, as he did here, take possession of the goods, and, *after due notice to the buyer,* sell them for the best obtainable price, and recover the difference, if any, between the amount so received and the contract price. This was proper under the evidence in this case, and the rights of defendant were sufficiently guarded and it certainly cannot complain of this instruction.—35 Cyc., 520; *Magnes v. Sioux City N. & S. Co.,* 14 Colo. App., 219." [The italics are mine.]

The reason no notice was given discloses to my mind, as the evidence throughout the trial discloses, that when plaintiffs sold this remnant of sheep, they did not have in mind any suit against defendants, but were simply disposing of what they had left out of the purchase and sale of a great number of sheep, over 100,000, mostly from New Mexico, selling six carloads to Farr and keeping the balance of the 10,000 of those shipped to Denver,

for their own use, thus clearing up the purchase, sale and delivery of sheep in New Mexico for that year.

The majority opinion says: "We agree with both the reasoning and the conclusion of Judge Bissell, in *Magnes v. Sioux City N. & S. Co., supra.*" There is a conclusion in that case to which especial attention is directed, concerning the measure of damages, which is quite applicable to the present case, as follows:

"Whether there was or was not a market price, whether there was a possibility to make a sale at another or greater price, whether the trees could have been preserved and a market made or a seller procured, all these things were left entirely unexplained by the company, nor was there otherwise any proof on which to base a judgment for the difference between the price at which the property was sold and that which Magnes had agreed to pay for it. This difference was assumed to be the measure of damages and the measure of recovery. While, as we have already said, this might under some circumstances control, under the proof it was wholly illegitimate and there is in the record no evidence showing that the company sustained damages to the extent of $175, which was their recovery.

"Since this is true, we are compelled to set aside the judgment and remand the cause for further consideration."

The result of the majority opinion is that, conceding plaintiffs could not recover upon the right or remedy stated in their complaint, and upon which the case was tried, and judgment rendered, they may, nevertheless, recover upon the second remedy suggested—that is, upon the theory that they kept the sheep and sued for the difference between the contract price and the fair market value at the time and place of delivery. This, in view of the circumstances, the indefiniteness and insufficiency of the testimony, and the law applicable to the case, consid-

ering at all times the excessive damages obtained and the substantial rights of defendants denied, ought not to be the decision of this court, and with deference to the view of my associates, it is my opinion the causes should be reversed and remanded.