[No. 3737.]

TATE ET AL. v. HOLLY ET AL.

1. APPEALS—*Finding on Conflicting Evidence*, is conclusive on appeal.

2. —— *Questions Not Presented Below.* Objections to instructions which were not called to the attention of the trial court will be disregarded on appeal.

3. —— *Harmless Error.* Generally one will not be heard to complain of an error which is to his profit.

4. NEW TRIAL—*Verdict Substantially Conforming to the Evidence*, will be sustained.

5. BILL OF EXCEPTIONS—*Time of Filing.* There is no limit of time within which the bill of exceptions must be filed with the clerk. If certified by the clerk to the court of review, as part of the transcript, this is sufficient evidence of its timely filing. That it bears a file mark as of a day antecedent to its authentication by the judge is unimportant.

*Appeal from Otero District Court.* HON. J. E. RIZER, Judge.

Mr. G. M. DAMERON, Mr. JULIUS C. GUNTER, and Mr. MALCOLM LINDSEY for appellants.

Mr. FRED A. SABIN and Mr. C. E. SABIN for appellees.

BELL, J.

This case was tried to a jury and resulted in a verdict in favor of the appellees in the sum of $1,465.98, upon which judgment was duly entered. The record discloses that on July 19, 1907, appellants sold and delivered to appellees, at Cherry Creek, Nevada, two carloads of horses, and contracted to sell them two hundred head more of the same quality at $10.00 per head, deliveries to be made at Cherry Creek every two weeks thereafter; and, upon this contract, appellees advanced the sum of $100.00. The first delivery under the contract should have been made August 2, 1907. The appellees sent two men from Colorado to Cherry Creek, and had them there

on that day, to receive this delivery, but no horses had been gathered, and the men consumed fourteen days in trying to get a shipment on the contract, but failed, and returned to Colorado, after incurring an expense of something like $200.00. It would seem that appellants intended to make a delivery about August 17th, and so informed Mr. Taylor, one of the men sent to receive the first delivery, and also wrote the appellees to the same effect; but appellee Grimsley, who was acting in the matter for the appellees, did not learn of it until about the 21st or 22nd of August. He then immediately wired appellant Tate, and started at once from Denver to Cherry Creek to receive a shipment, and arrived in Cherry Creek August 24th, a few hours after appellants, as they informed him, had sold 124 head at a profit of $3.00 per head above the price appellees had contracted to pay. Grimsley then went upon the range with appellants, and, by September 6th, they had brought into Cherry Creek one hundred head of horses, seven of which, he testified, were crippled, blind or too thin to meet the provisions of the contract. He offered to accept three carloads, or eighty-four of this one hundred head, but refused to accept a part carload, because, he insisted, that the contract·provided that all deliveries should be in full car lots, and appellants refused to deliver any, unless all were accepted, except such as were blind, or lame, or not of the quality contracted for, and offered to return the amount of $100.00 advanced on the contract and pay $150.00 to have the contract cancelled. Grimsley declined this offer, and returned to Colorado, and he testified that the expenses of this trip and the value of his time, which he fixes at $5.00 per day, amounted to $157.10.

There is a close agreement in the testimony of the parties as to the leading features of the contract and the dates of delivery. However, the appellants made some claim that the $100.00 paid on the contract was intended

as a forfeit, and that the men sent by the appellees to receive the first delivery did not spend the fourteen days necessarily in Nevada, but had consumed a portion of the time in visiting for their own pleasure; and, in the argument of counsel, at least, it is contended that a part or all of the expenses would have been necessary if the horses had been delivered according to contract. However, both parties admit in their testimony that, if the horses had been delivered, the railroad companies would have furnished transportation, and the only dispute about the contract which caused its abandonment was as to whether the horses were to be delivered in full car lots, or whether the appellees were obliged to accept all of the one hundred head, which included less than a half carload more than three full carloads of the quality bargained for. The jury, in finding the issues for the appellees, must have found this decisive point in their favor, and, having so determined it on conflicting evidence, the result is binding on this court.—*R. R. Co. v. McDonough*, 54 Colo., 515-517, 131 Pac., 402.

The court instructed the jury that, if they should find for the appellees, the damages should be computed upon the difference between the price of $10.00 per head, for which appellants agreed to furnish said horses, and the amount which the testimony showed the appellees would have received for the same upon the sale thereof, less the expense to the appellees in transporting said horses from the point of delivery to the place of sale; that, if they should find that the appellants failed to comply with their contract to deliver the horses, and that, by reason thereof, the appellees were put to expense in sending men to Cherry Creek, the place of delivery, the appellants were liable for all necessary and reasonable expenses that the appellees suffered in preparing to receive said horses, as shown by the evidence; and that, if they found from the evidence that the appellees paid to the

appellants the sum of $100.00 as a part payment on the horses, and that the same had not been returned, nor legally tendered back to them, and that appellants had failed to comply with their contract, they then should find in favor of the appellees for said sum of $100.00.

Counsel for appellants say: "We note that there are three elements of possible damage in this case (the profit on the horses, the expenses incurred in preparing to receive them, and the advanced payment), and that the court wrongfully instructed the jury as to each one of these three elements." If we should agree with counsel, under the practice in this jurisdiction, we are unable to see wherein we could aid the appellants, as no objection whatever was made to the giving of these instructions, nor was there any aid tendered the trial court in avoiding the alleged errors. Counsel are officers of the courts, and are charged with the duty of vigilantly guarding them against errors at trials, and, where they fail to give warning by objection or other appropriate means when an error is threatened against the interests of their clients in the trial courts, they should not be aided in correcting here what they might have prevented there. Our supreme court, in the case of *Keith v. Wells,* 14 Colo., 321-326, 23 Pac., 991, in considering an alleged error, to which a general objection was directed at the trial, but which was not specifically presented until upon appeal, tersely said that, if the points, which were presented to it, had been called to the attention of the trial judge, the court of review could not say what his rulings thereon would have been; and that it would be manifestly unfair, not only to the trial court, but also to the opposite party, to consider errors assigned to the instructions upon appeal, based upon matters that were not called to the attention of either upon the trial. In *Denver R. R. etc. v. Ryan,* 17 Colo., 98-104, 28 Pac., 79-81, our supreme court said:

"From time immemorial it has been a well-recognized and most salutary rule of the common law, that if counsel neglect to object or to point out errors occurring at the trial in such time and manner as will give opportunity for their correction, they will not, in general, be heard to complain of such errors in a court of review. This rule is so reasonable, and so essential to the administration of justice, that we cannot believe it could have been the intent of the legislature to overthrow it altogether. Any other rule would enable a party to sit silently by, knowing some error had been committed against his interest, of which perhaps no other person was aware at the time, and thus take the chances of a verdict in his favor, while having the sure means of setting aside the verdict if it happened to be against him. The law in this jurisdiction never has permitted, and it is to be hoped that it never will permit, such experiments with judicial proceedings. There will always be enough important questions to review in the appellate courts if parties are required to be vigilant to prevent error in the trial courts."

See also, 2 Thompson on Trials, sec. 2394; *Union Min. Co. v. Rocky Mt. Nat. Bk.*, 2 Colo., 248; *McFeters v. Pierson*, 15 Colo., 207, 24 Pac., 1076, 22 Am. St. Rep., 388; *Wray v. Carpenter*, 16 Colo., 271, 27 Pac., 248, 25 Am. St. Rep., 265; *Edwards v. Smith*, 16 Colo., 529, 531, 27 Pac., 809; *Supreme Lodge K. of H. v. Davis*, 26 Colo., 252, 263, 58 Pac., 595; *Beals v. Cone*, 27 Colo., 473, 488, 62 Pac., 948, 83 Am. St. Rep., 92.

We do not intimate that counsel in this case sought to obtain any advantage by not objecting, as all participants at the trial seemed to approve of the proceedings, and we are not able to say that substantial justice was not obtained by means thereof. All litigants are guaranteed a trial in strict conformity with the established rules of law and practice, but it is optional with them whether

they follow these rules, or liberalize them, as was done in this case wherein each side told its whole story, and had its own instructions given to the jury, without objection from the other; but, when they elect to make their own rules for the trial of their cause, we are relieved of the. duty, and generally deprived of the privilege, of granting relief therefrom on review.

Appellants set up five different measures of damages, which they say are correct under appropriate conditions, the fifth of which reads as follows:

"If the article in question has a market price, that will usually control as the best evidence of its value. If this test has been applied by an actual sale of it, the fact may be proved as evidence of its value.—3 Sutherland on Damages (3rd ed.), sec. 654, p. 1897."

They discard their first four selected rules for the measure of damages as not being applicable to the "legal evidence," and say:

"On the other hand, if the jury had taken the true measure of damages (the fifth, above quoted), they should have taken Tate's testimony, which was the only evidence of market value, and found the value to have been $15.74 per horse, and, deducting therefrom the $10.00 contract price, this would have left the damages at $5.74 per horse, or $1,148 in all."

To this last stated amount counsel for appellants argue that the jury should have added the amount of appellees' expenses and the advanced payment made on the contract, which would total $1,605.10, or $139.12 more than the amount of the verdict rendered, and, upon this, they insist that the jury followed neither the instructions of the court, nor the evidence of either party, and that, therefore, their verdict as returned should be set aside. A smaller verdict than the evidence justified, if their position is well taken, is an error in their favor, and, generally speaking, they are not permitted to object

to this result. However, we do not understand that the instructions of the court were such as to require the jury to find for the appellees in any fixed amount of expenses. The jury, under the instructions as given, were free to determine the amount of necessary and reasonable expenses incurred by appellees in preparing to receive the horses, and divers good reasons exist in law, and appear in the evidence, to justify the jury in disallowing a portion of the expenses as testified to. If this had been done, the verdict as rendered could be made to conform to the evidence of appellants and the measure of damages and reasoning presented by their counsel. Other computations, under the condition of the record before us, might well be made and accomplish the same result; but it is not within our duties to endeavor to discover the exact methods or reasoning resorted to by a jury in reaching the amount of its verdict. To sustain a verdict it is ordinarily sufficient if the court of review can determine a substantial agreement between it and the evidence.

The court gave no instructions of its own motion, and the parties requested none on certain phases of the evidence, but this did not deprive the jury from considering any evidence admitted by the court in reaching a verdict.

Objection is made to the consideration of anything in the bill of exceptions, because, it is said that it was prematurely filed. The record shows that it was filed with the clerk on the 23rd day of November, 1910, before it was signed by the judge; that on the 28th of November it was tendered to the judge, signed by him on the 27th day of December, 1910, and there is no evidence as to when it was re-filed with the clerk. There is a time limit within which a bill of exceptions must be tendered to the judge, but there is no time limit within which it must be filed with the clerk. There is a file mark evidencing the premature filing, but none showing the proper filing. The

marking of a paper filed merely preserves in writing evidence of the filing, the absence of which may be otherwise supplied. That the bill of exceptions was regularly certified by the clerk of the trial court to the appellate court as a part of the transcript is sufficient evidence of the timely filing.—*Eldred v. Malloy,* 2 Colo., 20-23.

We find no reversible error in the record, and, therefore, the judgment is hereby affirmed.

*Affirmed.*

MORGAN, J., dissenting.

---

MORGAN, *Judge, dissenting:*

An action for damages for the breach of a contract for the purchase or sale of personal property is, oftentimes, as in this case, nothing more than a claim for the benefit of the rise or fall in the market price of the commodity purchased or sold, even when a future delivery is actually intended; and the wisdom of the law, as announced in many adjudicated cases, has limited a recovery in such instances, except as to some special damages suffered, to the difference between the contract price and the market price at the time and place of delivery, or, if there be no market there, then the value, at such place, to be determined by the market price at the nearest place where there is a market, less the extra expense of delivery thereat. This is a wholesome general rule, "made in gross for men in the mass," and especially honored for the circumscribed limitations under which it must be applied. It tends to promote certainty and stability in business, by permitting a recovery, under the limitations, sometimes in the nature of a penalty (as stated in my dissenting opinion in *Leeper v. Schroeder,* 24 Colo. App., 164, 132 Pac., 704), beyond the actual loss of the party suing.

In this case no actual loss occurred to the plaintiff,

except the expense proved and the $100.00 paid, which he should recover by the ordinary procedure. The lower court, however, submitted an erroneous rule as to the measure of damages, by instructing the jury that the plaintiff was entitled to recover the difference between the contract price and what the testimony shows he would have received upon the sale thereof, less expenses of transportation to the place of sale, without further limitation as to such measure; although the plaintiff pleaded that he would have received $27.50 a head for the horses at La Junta, Colorado, and testified to. the same effect, and defendant testified to a sale of ninety-seven head at St. Louis, Missouri, at $15.30 a head, net, and to a sale of one hundred and ninety-seven head at Cherry Creek, Nevada, at $13.00 a head, net.

Now, the place of delivery was Cherry Creek, and the plaintiff did not prove that there was no market at the latter place, or that the horses had no value there, or that either of the other places was the nearest market thereto; and the motion for a new trial should have been granted, on the grounds stated in the motion that the verdict was contrary to the instructions and the evidence, and not warranted thereby.

"Where the verdict is not in harmony with the instructions and is not supported by any evidence, the judgment must be reversed."—*Hassell L. W. Co. v. Cohen,* 36 Colo., 353, 85 Pac., 89.

The majority opinion concedes the instruction was wrong, but permits a recovery of $1,465.98, upon the theory that the jury adopted the price received in St. Louis, and thus followed the instruction given, and for the further reason that counsel for the appellant, in their brief, say the jury never even followed the "true measure" of damages based on the sale in St. Louis. The majority opinion thus discloses a disposition to enforce the general rule as to the measure of damages, but over-

looks the limitations circumscribing it, and discloses an
effort to allow a recovery regardless of the limitations,
and affirms the judgment for a sum of money largely in
excess of what seems to me a just amount.  As indicated
in the majority opinion, the plaintiff testified that he
"tried to settle there for his expenses and his money
back—the $100.00; that this was $300.00, and the $100.00
made $400.00."

The evidence furthermore discloses the value of the
horses at the time and place of delivery, by a sale, *made
there,* of "one hundred and ninety-seven head" at $13.00
per head at the time of delivery, as shown by plaintiff's
and defendant's testimony.  This evidence shows the
measure of damages to be, in this case, $3.00 per head,
and a judgment for $600.00, and the actual expenses in-
curred, together with the $100.00 paid on the contract,
would have been the only judgment permissible under
the testimony.

I think we should not hold the appellant to the mere
statement by way of argument in the brief that "the true
rule of law" was based on the St. Louis sale, as to the
measure of damages, as such statement is made for the
purpose of the argument, and to argue that the jury
never even followed *that* rule; nor that we should take
the testimony of the defendant as to the sale in St. Louis
as. a test, as such testimony was introduced merely to
show that the plaintiff was not justified in refusing to ac-
cept the same horses when they were offered to him at
Cherry Creek, and thereby broke the contract himself.
There was no evidence that St. Louis was the nearest
market, and there *was* evidence showing a value at Cherry
Creek.  Neither do I think that appellant's failure to
object to the erroneous instruction should be considered
as an agreement on his part that such instruction was
correct.  I concur in the view that the lower court should
be advised concerning errors in instructions in order that

it may correct the same; but where, as in this instance, the jury did not follow the instruction, and the plaintiff failed to prove the necessary facts upon which to predicate the correct rule as to measure of damages, and where the error could have been corrected, when called to the court's attention in the motion for a new trial, the necessity of an objection, and the failure to make it, should not be considered fatal to the appellant's contention, considering that exceptions were duly allowed to the ruling of the court denying a new trial. Such rigid enforcement of a rule of practice should not be enforced, except to prevent injustice, or in instances where no injustice will be done. The size of the verdict in this case indicates that the jury were influenced by the erroneous instruction, although they never followed it to the extent of rendering as large a verdict as it commanded; but the verdict clearly indicates that they were left at sea, and, drifting into conjecture, found a verdict that cannot be definitely predicated upon any instruction or upon any evidence in the case.

It is apparent to my mind that the case was tried and the verdict rendered upon no true rule of law as to the measure of damages and upon insufficient evidence upon which to base such a rule, and I think a judgment based upon such a verdict ought not to stand. The judgment should be reversed.