This is an action for damages for an alleged breach of contract in defendants failing to deliver logs and for other breaches assigned by plaintiff upon a written contract between the parties.
According to the terms of the contract, defendants were to provide and furnish plaintiff a suitable place at Robersonville to put his mill and to furnish plaintiff at his mill not less than ten thousand feet of logs per day, of specified size and quality, for which plaintiff at the end of each recurring month was to pay defendants five (62) dollars per thousand "in cash or its equivalent."
This contract was made in December, 1890, and the parties commenced delivering logs and sawing lumber in March, 1891, which was continued until July, 1891. But before this time the plaintiff had fallen short in his payments, which he then settled by giving his note and mortgage on his mill for $1,100 in part, and paying the balance by a draft on Parmele 
Eccleston, to whom plaintiff was selling lumber. Defendants before this had received drafts on Parmele Eccleston in part payment for their logs; but having reason as they thought to suspect the solvency of Parmele 
Eccleston, defendants informed plaintiff that they would take no more of these drafts unless they were secured, and that they would stop delivering logs unless some arrangement was made to secure them. There was considerable chaffering between the parties about the matter, but the plaintiff failed to provide any additional security, and on 7 July defendants stopped the delivery of logs. But defendants, failing to get other security, on the next day notified plaintiff that they would continue to deliver the logs on the same terms they had been delivering them, and on the 9th they commenced delivering logs, which they continued until plaintiff notified them that he would not receive them.
It was decided when this case was here before that plaintiff was entitled to recover such damages as he sustained on account of the breach of contract — the failure to deliver logs; but if defendants on the next day offered to continue to deliver logs on the same terms they had been delivering them, and commenced to deliver them and continued to do so until plaintiff notified defendants he would not receive them, that plaintiff would only be entitled to such damages as he sustained between the time defendants stopped delivering the (63) logs and the time when they commenced to deliver them again.Same case, 114 N.C. 482. So the rule of damage in this case has been settled, and it only remains for us to see whether this rule has been observed and properly enforced.
There are no exceptions to evidence. There are a number of special instructions asked by defendants, but they were all given as asked, or *Page 46 
in substance, except 9, 17 and 18, and these, we think, were properly refused.
As to 9, there was no evidence that plaintiff was at work on the railroad during the time defendants failed to deliver logs. In fact there was no evidence showing that he was not on the railroad at that time, and it would have been improper to submit a question to the jury without some evidence to support it.
The 17th cannot be sustained. It is true that it was optional with plaintiff after the breach by defendants whether he would continue the old contract or make a new one with defendants. But this is not the point in the case. The question is the measure of damage on account of defendants failing to deliver logs. And if they only failed to deliver for one day, and then continued to deliver until they were notified by plaintiff that he would no longer receive them, what difference could it make whether plaintiff tried to buy them from others and could not? He had no need for buying from other persons when defendants were offering to deliver them on the same terms they had been delivering them.
The 18th prayer cannot be sustained and is disposed of by what we have said in discussing 17. This disposes of the prayers for special instructions, and it only remains to consider his Honor's charge to the jury.
His Honor in charging the jury upon the question of damage instructed them, among other things, that they should estimate the value of plaintiff's personal service as well as profits of mill in fixing (64) the amount of damage to which plaintiff was entitled, and to deduct expenses of mill, etc., and what plaintiff did earn or might have reasonably earned at other employment. Plaintiff objected to this part of the charge, and if it is liable to objection the plaintiff has failed to show us that he is damaged thereby. It is certain that under this charge plaintiff had the benefit of having his personal services considered by the jury in estimating his damages.
While there is no evidence tending to show the plaintiff did earn anything on that day, or that he might with reasonable diligence have done so, and while it may have been improper to submit this proposition to the jury when there was no evidence, we fail to see that plaintiff is damaged by this instruction.
The court further charged the jury: "The construction of a written contract is a matter of law to be passed upon by the court. And the court instructs you that it was no part of the original contract, for a breach of which this action is brought, that the defendants should accept the paper of Parmele Eccleston as the equivalent of money. And the *Page 47 
court further instructs you that, if you believe that the defendants took Parmele Eccleston's paper at various times during the contract, they were not thereby compelled to continue to do so under the original contract."
The plaintiff complains of this charge and insists that the contract is that plaintiff shall pay defendants for the logs "in cash or its equivalent," and that there was a verbal agreement that defendants would take drafts on Parmele Eccleston, and that that was what "equivalent" in the contract meant.
To be paid "in cash or its equivalent," without further explanation, would mean anything besides money that defendants might agree to take, as they agreed to take and did take a note (65) and mortgage or drafts on Parmele Eccleston. But there is nothing in the written contract fixing these or anything, as the equivalent of cash.
And if there was any other contract between the parties than the written contract set out at full length in plaintiff's complaint, it is not declared on in this action.
We therefore fail to see the error complained of in his Honor's charge. Indeed, as we think, it was a correct exposition of the law arising upon this contract.
Counsel for plaintiff seem to lay stress upon a sentence used by the Court in the opinion in 114 N.C. 482, where, in the argument of the case, the Court uses the following language: "If the parties had entered into a new contract identical in terms with the original," etc., and plaintiff says these terms of the renewal of the delivery of logs were not a renewal of the contract on "identically the same terms," as defendants still refused to receive drafts on Parmele Eccleston. This language was used by the Court for entirely a different purpose from that for which plaintiff wishes to use it. The Court was there using it to show that plaintiff would still have a right of action; that this renewal of the contract on identically the same terms as the old contract would not of itself be a waiver of the breach of the old contract. But how it can be used by plaintiff to show that, because he did not renew the contract on "identically the same terms," this would affect the measure of damage, we fail to see.
Plaintiff's damage does not consist in defendants failing to make a new contract, but because they failed to deliver logs under the old contract. And it has been shown in 114 N.C. 482, as well as in *Page 48 
(66) this opinion, that this was for the time intervening between the date when defendants stopped delivery and commenced again.
No error.
Affirmed.
Cited: Hollowell v. Ins. Co., 126 N.C. 401; Lumber Co. v. R. R.,152 N.C. 74; Jones v. Ins. Co., 153 N.C. 391.
(67)