## PIOWATY *v.* SHELDON.

1. Sales — Damages — Breach of Contract — Expenses of Resale—Recoupment.

In an action for breach of a contract to sell plaintiff apples of agreed sizes and quality, in which action defendant claimed damages for the purchaser's refusal to accept apples tendered in accordance with the agreement, it was competent to receive in evidence the expenses and charges of insurance, storage, and of a resale by defendant's agent at the nearest available market.

2. Same.

Where the property is in the possession of the seller, he may, without committing a breach of the contract, resell the goods if the original buyer refuses, without justifiable cause, to receive and pay for them, and may recover the difference between the contract price and net proceeds of such sale after deducting the expenses, interest, and charges of resale.

3. Same—Diligence.

The vendor is bound to exercise good faith and reasonable diligence to effect a resale at the highest price.

4. Same.

The cost of insurance is a proper expense thereof.

5. Same—Market—Resale.

The seller may hold the goods for a market or seek a market within a reasonable time, if there was none at the time and place of breach.

6. Evidence—Books—Secondary Evidence.

No error was committed in receiving in evidence a statement made out by the defendant's agent who resold the goods, showing the items of charge and expense, which the witness had sworn to and stated were taken from his books, the statement having been used by the parties as part of the *res gestæ*, and the contents of the statement having been brought out on cross-examination by appellant's attorney.

7. Sales—Contracts—Acceptance—Instructions to Jury.

The trial court did not err in refusing to charge the jury that, unless defendant furnished and packed apples of a particular grade and quality, as required by the contract, he broke his

contract, since it was defendant's claim that plaintiff sent on an inspector who examined and accepted the goods as packed by plaintiff; this claim not being covered by the request so refused.

8. SAME—DAMAGES.

There was evidence supporting the charge of the court as to the damages defendant was entitled to recover; and the verdict was not so excessive as to require the granting of a new trial.

Error to Sanilac; Beach, J. Submitted June 26, 1911. (Docket No. 48.) Decided October 2, 1911.

Assumpsit by Max Piowaty against Watson H. Sheldon for breach of contract. Defendant gave notice of recoupment. Judgment for defendant of $2,961.20. Plaintiff brings error. Affirmed.

*Moore & Wilson* (*Maurice W. Seitz*, of counsel), for appellant.

*William H. Aitkin* and *W. H. Burgess*, for appellee.

STONE, J. The plaintiff, a jobber of fruits and vegetables, residing in the city of Chicago, brought this suit against the defendant, a buyer and jobber of produce, residing at Lexington, in the county of Sanilac, in this State, to recover damages for the alleged breach of and a claimed penalty withheld by the defendant, under a contract in the words and figures following:

"LEXINGTON, Sept. 13, 1907.

"W. Sheldon, of Lexington, Michigan, sold to M. Piowaty, of Chicago, Ill., the whole output of all winter and fall apples for this season.

"The No. 1 apples should be packed free from worms and smooth stock, packed down to 2¼ inches. The No. 2 apples packed down to two inches with blow worms and not any small scabby apples. Should be put in uniform barrels.

"M. Piowaty paid on this contract $500.00 and pays for each car by presentation of B. of L. and bill to Lexington State Bank where the bank pay to Sheldon. The $500.00

stays for deposit until the last car shipped and Mr. Sheldon stands to this agreement.

"If we cannot get through rates in ten to 25 days this contract is void.

"M. PIOWATY.
"W. H. SHELDON."

It is undisputed that the price of the apples was $3 per barrel.

Shortly after the date of the contract the defendant began shipment to plaintiff of certain apples, which were shipped to customers of the plaintiff in St. Paul, Kansas City, and Minneapolis. Immediately upon the arrival of these apples at the various points of destination, complaints were made by the purchasers to the plaintiff touching the character of the apples, and refusing to accept them. Plaintiff claims that he investigated these various complaints, and, finding them to be well founded, notified defendant immediately, and refused to accept further apples. Plaintiff claims that he had no opportunity of inspecting these apples prior to the shipment by the defendant until their arrival at destination.

This is denied by the defendant, who claims that the apples were to be inspected and paid for at Lexington, and that plaintiff had an inspector on the ground who had every opportunity to inspect, and, in fact, did so. The plaintiff also claims that the apples were improperly packed in the barrels, being loose and not pressed down, and that it became necessary to repack all of the apples that were sent to Chicago on account of this condition. This was also denied by the defendant, who claims that the apples were properly packed. The plaintiff claims that in repacking he discovered that the No. 1 apples included apples with side worms, were full of undersized apples with lots of decay, and that the so-called No. 2 apples were really cull or cider apples. This claim was also denied by defendant, and there was considerable testimony *pro* and *con* as to the quality of the apples. The plaintiff received from defendant, before refusing to

take further apples, about 1,400 barrels, which he claims he sold at a loss of $915.

It is undisputed that the plaintiff, at the time of making the contract, paid to defendant, Sheldon, in accordance with the terms thereof, the sum of $500, no portion of which was ever received back by him. At the time the plaintiff made the contract with defendant, he claims he had made arrangements for the sale of the entire season's apples contracted for from defendant at an advance of 35 cents per barrel, net. The apples which were packed by defendant under this contract were purchased by the defendant from various farmers in Sanilac county, covering a territory of a number of miles on either side of the village of Lexington; and the apples were being packed in the various orchards at the same time by different packers in defendant's employ. The plaintiff claims that to assist the defendant in packing the apples he sent an employé, a Mr. Moore, from Chicago, to see that the apples were packed properly in the orchards, and he claims that Moore was not there in the capacity of an inspector, and had nothing to do with inspection; while the defendant gave testimony tending to show that the plaintiff had promised to send an inspector, and that Moore came and acted in that capacity, with the knowledge and under the instruction of the plaintiff. There is shown in the record a good deal of testimony as to the conduct of Moore, as to the complaints he made to the packers and to the defendant, and that some apples were rejected by Moore.

The plaintiff offered evidence tending to show the breach of the contract in the particulars named, and the damage which he had sustained. The defendant, under a notice attached to his plea claiming damages by way of recoupment, offered evidence tending to show that the contract had been kept and performed by him, and that the plaintiff was to accept and pay for these apples at Lexington; and that the plaintiff himself was guilty of a breach of the contract in refusing to accept the remainder of the apples.

It appears that after the refusal on the part of the plaintiff to receive any more apples under the contract, because of the defective quality, the defendant notified the plaintiff that the remainder of the apples were ready for shipment, and that he should hold the plaintiff for any loss which he sustained by reason of the plaintiff's failure to accept the apples, and that he would go ahead and do the best he could with them. And thereupon the defendant shipped to one Jacob Smith, of Detroit, who was a commission broker, 1,466 barrels of apples, which he claimed were the balance under the contract with plaintiff; and, in addition, he also shipped to said Smith 81 barrels of cull apples, which had been frozen.

The defendant gave testimony tending to show that there was a panic in the late fall of 1907, and what is termed a "slump in the apple market;" that there was no market for apples at Lexington, and that the nearest market was the city of Detroit; that when he shipped the apples to Smith he instructed him to dispose of them as soon as he could, and for the best price obtainable. He offered evidence tending to show that it was impossible to sell the apples in the fall of 1907, in the city of Detroit, but that the said Smith was able to dispose of the 81 barrels of cull apples. The 1,466 barrels of apples were stored by the witness Smith in the basement of the Biddle House in Detroit, where they were kept until about the 1st of April, when they were taken out and sold to various persons.

The man Smith was a witness for the defendant. He testified that he kept no record, showing the amount realized for the sale of one car load of the apples. At the time of his settlement with the defendant, he produced what he represented to be a statement of his account of the sale, which, upon his re-examination by the defendant, was offered in evidence, and marked "Exhibit 24." This exhibit was as follows:

Watson Sheldon,
In Account with Jacob Smith.

|  | Dr. | Cr. |
|---|---|---|
| By 1,466 barrels of apples | | $1,575 33 |
| To Storage at $20.00 per month | $100 00 | |
| Insurance | 35 40 | |
| Cartage | 57 20 | |
| Labor | 22 75 | |
| Freight paid | 187 65 | |
| Commissions | 157 53 | |
| Check to balance | 1,014 80 | |
| Total | $1,575 33 | $1,575 33 |

Upon the direct examination of the witness Smith, he testified to the facts appearing upon the face of the statement, and the only reference he made to this statement was in the following words:

" I made a statement to Mr. Sheldon in writing of the apples and their disposition."

He then testified as to the quantity, and as to his conduct in connection therewith. He testified to the expense of storage, the insurance, and the expense of getting the apples to the warehouse from the dock, the cartage, labor charge, freight, and his own charge in handling the apples. Upon his cross-examination, he was interrogated more minutely as to the statement. He testified that the same was taken from his sales book, which sales book consisted of a blotter. His attention was called to his books, and he testified generally as to the efforts which he made to sell the apples. He testified that at the time he settled with Mr. Sheldon they both had access to the books and freight bills, and the manner in which the statement was made; that it was made from the actual sales of the apples as they showed on the book, and he swore to the correctness of this statement. The defendant, on re-examination, offered the statement in evidence. It was objected to by plaintiff's counsel, on the ground that it appeared to be a transcript of the record of a book which was not produced in evidence, not made at the

time the sale was made, but a summary made long after. It was received in evidence over and against the objection and exception of plaintiff's counsel.

The trial resulted in a verdict and judgment for the defendant in the sum of $2,961.20. There was a motion for a new trial upon the grounds that the verdict was against the law and evidence; that there was no testimony to support the verdict; that the verdict was excessive; that the court erred in receiving the testimony of the witness Smith touching the sale of the apples; and upon the ground of newly discovered evidence. The motion was denied by the circuit judge, and reasons filed therefor, which were duly excepted to by the plaintiff. The plaintiff has brought the case here upon writ of error. There are ten assignments of error.

(1) The first assignment of error is to the effect that the court erred in overruling the objection of plaintiff's counsel to the introduction of testimony relative to the claimed charges and expenses that defendant alleges he was put to in the storage and insurance of the apples in question.

(2) That the court erred in overruling plaintiff's objection to the introduction of the testimony of the witness Smith, relative to the statement used by defendant and Smith, upon which statement the said Smith fixed the claimed amount that had been received by him for the apples sold; the original books of entry not having been produced, and the statement having been made long after the transaction.

(3) The third, fourth, fifth, sixth, seventh, and eighth assignments of error are based upon the refusal to give plaintiff's requests to charge.

(4) The ninth assignment of error complains of the charge relative to the amount of damage that might be awarded to defendant because of the fact that there was no competent testimony in said cause to warrant such charge.

(5) The tenth assignment alleges error in refusing to grant plaintiff's motion for a new trial in said cause, for the reasons: (a) That the evidence on the part of the defendant was insufficient to go to the jury. (b) That there was no testimony whatsoever to support the verdict as to

defendant's damages. (*c*) Because the verdict was excessive.

Plaintiff's requests to charge were as follows:

"(1) The jury are instructed that if the defendant did not ship the grade and quality of apples provided for in the contract, plaintiff would have the right to dispose of the apples so received by him (the said plaintiff), and maintain an action against the defendant for the loss suffered upon said apples, growing out of said sale, because it became and was the duty of the plaintiff to do everything in his power to reduce the damages to the defendant growing out of said breach of contract by the defendant.

"(2) The jury are instructed that if you should find that the defendant did not furnish and ship to plaintiff apples of the grade and quality provided for by the terms of the contract this would constitute a breach of the contract on the part of the defendant, and plaintiff would have the right to cancel the contract, refuse the balance of the apples, and recover the damages which the evidence shows that the plaintiff has sustained.

"(3) The jury are instructed that the defendant, under the terms of the contract, was required to furnish and pack apples of a particular grade and quality called for by the contract, and before the defendant is entitled to recover from the plaintiff the defendant must show that he did furnish and pack apples of the kind and quality called for by the contract, and in all other respects complied with the contract, and should you find that he (the defendant) did not pack and furnish apples called for by the terms of the contract then the defendant was guilty of a breach of the contract and the plaintiff (Mr. Piowaty) is entitled to recover.

"(4) The jury are instructed that the plaintiff (Mr. Piowaty) cannot be bound by the actions, conversations, or doings of Mr. Moore, unless it is shown by the evidence that Mr. Moore was acting strictly within the scope of authority given him by Mr. Piowaty, and Mr. Moore had no authority to accept or reject apples not in accordance with the contract, unless you find from the weight of evidence that Mr. Piowaty gave him such authority.

"(5) Should you find the evidence that the defendant or his packer placed apples in barrels that were not called

for or permitted by the terms of the contract between the plaintiff and the defendant, then such act or acts on the part of the defendant or his packers constitutes a breach of contract upon the part of the defendant, and the plaintiff (Mr. Piowaty) was justified and had the right to rescind the contract and refuse to take any more apples, and is entitled to recover the balance of the deposit money and the damage he has sustained.

"(6) The jury are instructed that the plaintiff had the right to rely upon the express terms of the contract, so far as the grade and quality of the apples therein described were concerned, and a right to insist that the defendant would carry out the contract and furnish the grade and quality of apples called for by the contract, and it became and was the duty of the defendant (Mr. Sheldon) to furnish the grade and quality of apples called for by the contract, irrespective of any inspection."

We will consider the assignments of error in their order, prefacing such consideration with the remark that a careful examination of the record discloses that the case presented mainly a question of fact; that the same seems to have been carefully tried, and submitted to the jury upon a full and well-considered charge.

1. Taking up the first assignment of error, we are unable to agree with counsel for the plaintiff that the defendant was not entitled to charge the plaintiff with the expenses in connection with the storage and insurance of the apples in question, if entitled to recover at all. The case was fully submitted to the jury on the facts relating to the breach of this contract, in the particulars claimed by the plaintiff, and on the theory that unless plaintiff had broken the contract the defendant could recover nothing under his claim for recoupment in damages, and that in such case, if plaintiff showed a breach of the contract on the part of the defendant, the plaintiff was entitled to recover his damages under the evidence in the case. We find no error in this portion of the charge, but think that the same finds support in the following authorities: In 35 Cyc., at pages 520, 521, and 522, the rule in this country is stated as follows:

"In the United States the rule is well settled that where

the goods are in his possession the seller may, without committing a breach of the contract, resell the goods, if the original buyer refuses without justifiable cause to receive and pay for them, and may recover the loss sustained in the difference between the contract price and the price received on resale, and the expenses of making the sale, and, in addition, the cost of storage, interest, and an allowance for his time as agent in reselling.   In making such resale, the seller acts as agent of the buyer, but not in such a literal sense as to confer on the buyer any title or interest in the property."

Many cases are cited, including *Doty* v. *Nixon*, 109 Mich. 266 (67 N. W. 116); *Van Den Bosch* v. *Bouwman*, 138 Mich. 624 (101 N. W. 832, 110 Am. St. Rep. 336); *Kellogg* v. *Frohlich*, 139 Mich. 612 (102 N. W. 1057). The vendor is bound to the exercise of good faith and reasonable diligence to effect a sale at the best price. *Smith* v. *Pettee*, 70 N. Y. 13; *Rosenbaum* v. *Weeden*, *Johnson & Co.*, 18 Grat. (Va.) 785 (98 Am. Dec. 737); *Hill* v. *McKay*, 94 Cal. 5 (29 Pac. 406); *North Georgia Milling Co.* v. *Elevator Co.*, 130 Ga. 113 (60 S. E. 258, 24 L. R. A. [N. S.] 235).   As to right to insure, see *Lewis* v. *Greider*, 51 N. Y. 231.   We do not understand that the rule laid down in *Tustin Fruit Ass'n* v. *Fruit Co.*, 53 Pac. 693, cited by plaintiff, differs from the general trend of the authorities on the subject.

If there was no market value at the time and place of breach, then the vendor might hold for or seek a market within a reasonable time.   *Williams* v. *Robb*, 104 Mich. 242 (62 N. W. 352); 2 Mechem on Sales, § 1690; *Henry* v. *Hobbs*, 165 Mich. 183 (130 N. W. 616); 3 Sutherland on Damages, pp. 1855, 1858.

2. Did the court err in admitting in evidence the statement made by the witness Smith under the circumstances of the case?   In this connection, it is important to note the sequence in which the statement in question was offered and received in evidence.   An examination of the record discloses that Mr. Smith testified in his direct examination to the facts appearing upon the face of the

statement, and independent of it. When he was cross-examined, he was asked about the contents of the statement, and he said:

"The statement which I rendered to Mr. Sheldon was taken from the sales—from my books. This shows I received for the 1,466 barrels $1,575."

Then counsel for the plaintiff proceeded to examine the witness at length with reference to the contents of the sales books then in court, from which this statement was made. And he testified that he believed the statement to be correct. On redirect examination he testified more fully as to how and when the statement was made up, and the same was offered in evidence by the defendant. It is apparent, therefore, that the contents of this statement were called out in detail by appellant in his cross-examination. We think there was no error in receiving the same in evidence, but that the ruling finds support in numerous decisions of this court. *Pierce* v. *Rehfuss*, 35 Mich. 53; *Smith* v. *Jackson*, 113 Mich. 511 (71 N. W. 843); *Blitz* v. *Roach*, 121 Mich. 135 (79 N. W. 1095).

The statement appears to have been prepared at the time of the close of the dealing between the witness Smith and the defendant. It was a contemporaneous statement used by them on that occasion, and we think it was admissible in connection with the testimony of both Smith and the defendant, as a part of the *res gestæ* of the transaction. *Raynor* v. *Norton*, 31 Mich. 210; *Fish* v. *Adams*, 37 Mich. 598; *Hudnutt* v. *Comstock*, 50 Mich. 596–601 (16 N. W. 157); *Smith* v. *Pickands*, 148 Mich. 558 (112 N. W. 122).

3. We have examined the plaintiff's requests to charge. The first and second were in substance given in the general charge of the court. The third request should not have been given, because it ignores the claim of the defendant, which was supported by testimony, that the man Moore was an inspector for the plaintiff, who accepted the apples at Lexington, when they were paid for. The

fourth request was in substance covered by the charge of the court. The fifth request was properly refused for the same reason that the third request was refused, and the sixth was properly refused for the same reason.

4. The ninth assignment of error complains of the charge of the court relative to the amount of damages that might be awarded to the defendant, and claims that there was no competent testimony in the case to warrant such charge. We cannot agree with plaintiff's counsel in this contention. We think that the defendant's evidence tended to show at least that he acted in good faith in the sale and disposition of the apples which the plaintiff refused to take, and that if the jury found that the plaintiff had broken the contract himself, and had refused to receive the 1,466 barrels of apples, that the defendant had the right to dispose of the same, and to make the charges which were made, as shown in Exhibit 24. The law upon the subject of the right and duty of the party under such circumstances is, we think, well settled, and we cannot agree with the plaintiff's counsel that there was no evidence in the case to warrant the charge of the court. The court said upon that subject:

"You may consider the evidence of sales made by Mr. Sheldon of the apples remaining, in regard to the market price, provided he used due diligence to market the same and to obtain the market value, or used his best endeavors to obtain the market value. It was his duty to save as much loss as possible. In determining the question of diligence, the season of the year, the facilities for shipment, so far as disclosed by the evidence, and the condition of the market may be taken into consideration by you. It is for you to determine the market value of the apples refused from all the testimony as to the markets in the case."

See the authorities cited upon the first point.

5. The tenth assignment of error complains of the refusal of the court to grant a new trial for the reasons above stated. Upon this subject it is sufficient to say we think that there was evidence to go to the jury, and that

there was testimony to support the verdict, if believed by the jury.   That the verdict was not excessive, in view of the evidence on behalf of the defendant, is demonstrated by an examination of the record.

We find no reversible error in the case, and the judgment below is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, and McALVAY, JJ., concurred.