278 P.3d 906

**TECHNOLOGY CONSTRUCTION, INC., an Arizona corporation, Plaintiff/Appellee,**

v.

**CITY OF KINGMAN, a municipal corporation, Defendant/Appellant.**

**No. 1 CA–CV 11–0193.**

Court of Appeals of Arizona, Division 1, Department D.

June 12, 2012.

Polsinelli Shughart PC By Robert O. Dyer, and Wayne B. Ducharme, Phoenix, Attorneys for Plaintiff/Appellee.

Gust Rosenfeld PLC By Richard A. Segal, Phoenix, Attorneys for Defendant/Appellant.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 Defendant City of Kingman (City) appeals the trial court's judgment in favor of plaintiff Technology Construction, Inc. (TCI) in the amount of $324,933 plus interest, attorneys' fees and costs, and the denial of its motion for new trial pursuant to Arizona Rule of Civil Procedure 59. For the reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 In July 2005, TCI entered into a construction contract with City for the construction of the Kingman Airway Avenue Railroad Crossing Improvement District, Project No. 05–ID–0015 (the project). The project consisted of an underpass railroad crossing, preparation of an embankment for a "shoofly"[1] for the Burlington Northern Santa Fe Railroad, excavation, relocation of utilities, construction of storm drains, paving, and various improvements. TCI was the lowest responsible bidder for the project at $5,226,722.

¶ 3 Work on the project was scheduled to be done in two phases. Phase one was scheduled to begin June 1, 2005, and was to be finished by June 30, 2005.[2] Phase two was scheduled to begin July 18, 2005, and was to be completed by March 15, 2006.[3]

TCI's work did not commence until October 2005, however, as City did not present a contract for TCI to sign until July 7, 2005, and City did not give TCI notices to proceed with the construction until October 14, 2005 (phase two) and November 3, 2005 (phase one).[4] TCI did nothing to cause this delay.

¶ 4 In May 2006, TCI submitted a notice of claim to City regarding the work it had contracted to perform. TCI claimed that adjustments to the contract were necessary due to "the increased cost of asphalt materials arising out of the delay in City's Notice to Proceed, changes in the work, delays beyond the control of (TCI) and cost impact on oil-based products by Hurricane Katrina."[5] The notice of claim letter stated that TCI would submit a change order request for the increased cost of its materials from October 2005 onward, once the final quantity and price of materials had been determined. Subsequently, TCI requested additional payment, but City did not pay.

¶ 5 TCI filed an action in Maricopa County Superior Court against City for breach of contract and violation of the prompt payment act; venue was transferred to Mohave County Superior Court. City filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, which the trial court denied.

¶ 6 The trial court held a two-day bench trial. After the trial, the court dismissed TCI's complaint on the ground that TCI's notice of claim failed to meet the requirements of the notice of claim statute. TCI timely appealed. In an unpublished decision in 1 CA–CV 09–0011, another panel of this court reversed the dismissal of the complaint and remanded for further proceedings in the trial court, finding that City had waived its right to assert the affirmative defense that the notice of claim was deficient. We asked

---

1. The "shoofly" was a temporary bypass needed to maintain the significant railroad traffic passing through the construction site while the overpass was being constructed, approximately eighty trains per day.

2. Phase one included the shoofly, relocation of a sewer line, and relocation of a water line.

3. Phase two was related to work on the road, including excavation, paving, the construction of a storm drain, gutter, and sidewalk, and other incidental work.

4. When TCI submitted its bid on the project in May 2005, it was told that the contract would be awarded on May 16, 2005 and would be executed within five business days after being awarded.

5. Hurricane Katrina occurred in August 2005.

the trial court to render a decision on the merits of TCI's complaint as presented to the court during the bench trial.

¶7 After considering TCI's brief on the proper measure of damages,[6] the trial court entered judgment in favor of TCI in the amount of $324,933 plus pre-judgment interest in the amount of $117,785, post-judgment interest at the rate of ten percent per annum, and attorneys' fees and costs. The trial court made extensive findings of fact and conclusions of law. The court's order provides, in part:

The record before the Court contains undisputed testimony as to delay after delay. None of the delays can be attributed to TCI. TCI did not delay the execution of the Contract. TCI did not initiate the requirement that the Phase 2 work commence before Phase 1 work. There were unexpected utilities that had to be relocated to complete the construction on the Project. Reengineering had to occur with respect to the sanitary sewer.

. . .

The former City Engineer for the CITY also testified. He testified that the delay in executing the Contract occurred because the CITY had to go back to the District property owners in order to pay for additional costs. The City Engineer, Mr. Johnson, agreed that TCI was not responsible for that delay. Mr. Johnson further testified that TCI was not responsible for the Phase 1 work not beginning on June 1, 2005, but being commenced many months later. Mr. Johnson further testified that it was not TCI's responsibility for the delay with respect to the work completed by BNSF. He testified the delays by the CITY in getting the Contract executed and financing in place made it impossible for BNSF to complete its work prior to the fourth quarter of the year.

The City Engineer further testified that there were a number of unforeseen conditions that had to be addressed throughout the Project. Mr. Johnson not only testified that these were not the fault of TCI, but that TCI handled the unforeseen problems in a responsible manner.

. . .

As a result of Hurricane Katrina, the price of oil materials increased dramatically. At the time of the bid in May, 2005, the price of the oil materials was $190.00 per ton FOB. The FOB price of oil increased to $240.00 per ton in October, 2005, after Hurricane Katrina. In the first quarter of 2006, the price was now $275.00 per ton. At the time of delivery of the materials to the Project for paving the price of oil had increased to $340.00 per ton FOB. This led to an increase in cost of asphalt.

At the conclusion of the Project, 10, 359 tons of asphalt were installed. The initial bid price was $559,988.00 or $54.10 per ton. The actual price to install the asphalt was $884,921.00 or $85.40 per ton. The price for asphalt in October/November, 2005, when the CITY gave notice to proceed, was $61.00 per ton. The amount of damages claimed by TCI is $324,933.00, or the total increase in cost from bid/contract execution to actual cost of installation.

. . .

CITY contractually obligated itself to pay for damages based upon delay under Section 109.8.2 (of the MAG Specs). The CITY further obligated itself to pay for damages when there are unforeseen circumstances that neither party anticipated at the time of contracting under Section 110.1 (of the MAG Specs). Again, the record is replete with unforeseen circumstances that delayed this project. The mere fact that Hurricane Katrina occurred simply drove up the damages that neither party anticipated. Hurricane Katrina did not hold up performance of the Contract terms or otherwise contribute to the delay. However, it was an unforeseen circumstance that increased the cost of materials. The unforeseen circumstances were those that created the various delays referenced previously. The cost increase due to Hurricane Katrina is a changed condition under § 110.1. It further added to TCI's damages as additional expenses occurred due to delay under Section 109.8.

---

6. The trial court requested both parties to submit a damages brief but City did not do so.

A.R.S. § 34–221[7] bolsters TCI's position. Expenses occurred due to delay. The CITY was responsible for the delay. Neither party contemplated the increase in prices due to Hurricane Katrina. There was timely notification of the issues and damages to the CITY. TCI reasonably and judiciously handled the issues. TCI has met the statutory elements for a damage award.

The Court further notes that this Agreement does not contain a force majeure clause. The CITY could have insulated itself from damages based upon an act of God. It did not do so. The CITY prepared this Contract, TCI did not. . . . It is apparent to the Court that the Contract placed the risk of loss clearly upon the CITY.

. . .

The Court concludes [that] Plaintiff is entitled to damages in the amount of $324,933.00. In *New Pueblo Constructors, Inc. v. State,* 144 Ariz. 95, 696 P.2d 185, 194, 195 (1985) the calculation of damages based upon the bid cost as compared to the actual installed cost after deducting costs related to the damages, is a proper basis to determine damages. The initial bid price was $54.10 per ton. The installed price was $85.40 per ton. The difference is the sum of $324,933.00.

City timely appealed from the trial court's judgment.

## DISCUSSION

¶ 8 In this appeal, City asserts that: (1) the improvement district construction contract prevented TCI from obtaining a judgment against it for its additional work expenses because the contract contained a no liability clause; (2) TCI may not recover its additional expenses relating to Hurricane Katrina because the contract was a fixed price contract for labor; (3) because TCI's claim for breach of contract damages consist-ed "entirely of higher material costs which were not in the contemplation of the parties when they made the contract," the rule of *Hadley v. Baxendale* prevents TCI's recovery of damages; and (4) there were no "changed conditions" supporting TCI's claim for additional compensation. Our standard of review is de novo because this appeal solely involves issues of contract interpretation. *C & T Land & Dev. Co. v. Bushnell,* 106 Ariz. 21, 22, 470 P.2d 102, 103 (1970).

■ ¶ 9 City points to the following clause in the construction contract:

**IT IS EXPRESSLY UNDERSTOOD AND AGREED by the parties to this agreement, that in no case** (except where it is otherwise provided for in Arizona Revised Statutes, §§ 48–571 to 8–619 inclusive) **will the City or any officer thereof, be liable for any portion of the expenses of the work aforesaid,** nor for any delinquency by persons owning property assessed, nor for the failure of the City to sell its improvement bonds to finance this contract.

(Emphasis added). The construction contract incorporated other documents, including the 2004 Edition of the Uniform Standard Specifications for Public Works Construction, published by the Maricopa Association of Governments (MAG Specs). The MAG Specs provide, in relevant part:

109.8.2 Contracting Agency Delays: Arizona Revised Statute [§ ] 34–221 states "A contract for the procurement of construction **shall include a provision which provides for negotiations between the Agent and the Contractor for the recovery of damages related to expenses incurred by the Contractor for a delay for which the Agent is responsible, which is unreasonable under the circumstances and which was not within the contemplation of the parties to the contract."**

---

7. A.R.S. § 34–221(F) (2005) mandates delay damages in public construction contracts:

A contract for the procurement of construction **shall include a provision which provides for negotiations between the agent and the contractor for the recovery of damages related to expenses incurred by the contractor for a delay for which the agent is responsible, which is unreasonable under the circumstances and which was not within the contemplation of the parties to the contract.** This section shall not be construed to void any provision in the contract which requires notice of delays, provides for arbitration or other procedure for settlement or provides for liquidated damages.
(Emphasis added).

In this case, if the Contractor sustains damages which could not have been avoided by the judicious handling of forces, equipment and plant or by reasonable revision in the Contractor's schedule of operation, the compensation for such damages will be negotiated. The Contractor shall notify the Engineer of the condition in writing by the next work day. Failure to notify the Engineer within this time may be just cause to reject any claims for such damages.

**110.1 General.** When changes are initiated by the Contracting Agency, or as a result of decisions rendered by the Agency, inaction of the Agency or **changed conditions unknown to all parties at the time of bid, the Contractor may request an adjustment to the contract amount and/or contract time.** This section does not preclude the use of legal remedies in the event of claims or litigation brought by third parties. . . .

(Emphasis added). City argues that the contract's no liability clause prevents TCI's recovery, in spite of the delay damages and changed conditions clauses contained in the MAG Specs which were incorporated into the contract. TCI maintains that the no liability clause has a much narrower meaning than the meaning City gives it. According to TCI, the clause is limited to the original scope of work set forth in the bid documents, an interpretation which "gives meaning and effect to other provisions of the Construction Contract, (and) which provide(s) for the payment of additional compensation to TCI for changed scope of work, delay, changes made by City and changed conditions."

¶ 10 There is no Arizona case interpreting a no liability clause in a construction contract. General Arizona contract principles apply. It is well-established that the meaning of a contract must be determined by reading the instrument as a whole, and not by construing different sections of the contract separately. *Daily Mines Co. v. Control Mines, Inc.,* 59 Ariz. 138, 147, 124 P.2d 324, 328 (1942). Furthermore, "[w]e will, if possible, interpret a contract in such a way as to reconcile and give meaning to all its terms, if

reconciliation can be accomplished by any reasonable interpretation." *Gfeller v. Scottsdale Vista North Townhomes Assoc.,* 193 Ariz. 52, 54, ¶ 13, 969 P.2d 658, 660 (App. 1998) (citing *Hamberlin v. Townsend,* 76 Ariz. 191, 196, 261 P.2d 1003, 1006 (1953)).

¶ 11 The parties cite a California statute, California Public Contract Code § 20442 [8], which contains a provision similar to the language in the construction contract in this case:

[A special improvement district construction] contract shall contain express notice that, in no case, except where it is otherwise provided by law or by charter will the city, or any officer thereof, be liable for any portion of the expense, nor for any delinquency of persons or property assessed.

In *Byson v. City of Los Angeles,* 149 Cal. App.2d 469, 308 P.2d 765, 767 (1957), the California District Court of Appeal considered whether the no liability provision in the California statute would prevent a contractor from stating a cause of action for breach of contract against the City of Los Angeles for additional repair work the contractor was required to perform in order to receive payment. The California court found that the no liability clause did not bar the contractor's breach of contract action, finding that the statute did not relieve the city from liability. *Id.* at 768. Instead, the no liability clause simply meant that the City of Los Angeles could not be held liable for the payment of the original contract price for the original scope of work funded by the special assessment. *Id.* In another California case, *Lee C. Hess Co. v. City of Susanville,* 176 Cal. App.2d 594, 1 Cal.Rptr. 586, 588 (1959), the California District Court of Appeal addressed the issue of delay damages in relation to California's no liability clause. There, the court found that section 5285 did not exempt the city from liability to a contractor for damages resulting from the delay caused when the city attempted to rescind a construction contract. *Id.* at 589.

¶ 12 Similarly, in *Azusa Western Inc. v. City of West Covina,* 45 Cal.App.3d 259, 119

8. This statute was formerly known as California Streets and Highways Code, section 5285.

Cal.Rptr. 434, 435–36 (1975), the City of West Covina argued that the California statute meant it had no liability to a labor supplier who furnished labor and material to the contractor the city had contracted with to make street improvements. The court held that section 5285 did not exonerate the city from liability in a situation where the city failed to follow California statutes, thereby depriving the labor supplier of its lien rights. *Id.* at 436.

¶ 13 Here, the trial court found that City was responsible for the delay that occurred and that TCI was entitled to delay damages pursuant to Section 109.8 of the MAG Specs and A.R.S. § 34–221. We are not persuaded by City's argument that the no liability clause insulates it from liability for TCI's damages caused by the significant delays that occurred in this case.

■ ¶ 14 City next argues that the construction contract was a fixed price contract and thus TCI may not recover the cost of the increased price of materials. We disagree. The contract expressly provided for changes in the contract amount by incorporating the MAG Specs. Furthermore, there were multiple change orders which altered the price of the construction contract once work was begun. The first change order decreased the contract price by $14,470 (relocate sewer main). The second change order increased the contract price by $18,020 (unknown buried utility lines), and the third change order increased the contract price by $59,302.34 (additional labor and materials for changes requested by City).

■ ¶ 15 City cites the rule of *Hadley v. Baxendale* to argue that TCI's delay damages for increased material costs were not foreseeable. The rule states:

> Damages recoverable on a breach of contract are measured by the actual loss sustained, provided such loss is what would naturally result as the ordinary consequence of the breach, or as a consequence which may, under the circumstances, be

presumed to have been in the contemplation of the parties as the probable result of a breach.

*McFadden v. Shanley,* 16 Ariz. 91, 95, 141 P. 732, 733 (1914) (quoting *Hadley v. Baxendale,* 9 Exch. 341 (Court of Exchequer 1854)). The damages here were proximately caused by City's delay, and delay damages were readily foreseeable, as evidenced by the delay damages provision contained in A.R.S. § 23–221(F) and section 109.8 of the MAG Specs. *See Coughlin v. Blair,* 41 Cal.2d 587, 262 P.2d 305, 314–15 (1953) (increased material costs recoverable as damages due to contractor's delay). Prices of commodities such as construction materials change over time and in accordance with market forces under many influences, including weather. The fact that Hurricane Katrina drove up the price of asphalt materials subsequent to the signing of the contract does not mean that delay damages were unforeseeable.[9]

¶ 16 Finally, City argues that the unexpected increase in the cost of materials was not a "changed condition" pursuant to MAG Specs section 110.1 which would support TCI's claim for additional compensation. We need not address this argument because we find that TCI is entitled to damages under the delay damages clause.

## CONCLUSION

¶ 17 For the foregoing reasons, we affirm the judgment of the trial court. City's request for attorneys' fees pursuant to A.R.S. § 12–341.01 is denied. We award TCI its reasonable attorneys' fees and costs on appeal.

---

9. Delay damages were foreseeable notwithstanding the trial court's finding that "Neither party contemplated the increase in prices due to Hurricane Katrina." "Just as reason to foresee does not mean actual foresight, so also it is not required that the facts actually known to the defendant are enough to enable the defendant to foresee that a breach will cause a specific injury or a particular amount in money." 11 *Corbin on Contracts* § 56.7 (rev. ed. 2005).